# IN THE UNIITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MICHELLE MOSS, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: _____ |
| | ) |
| DAVID AND GOLIATH MOVING, | ) |
| SPIRIT VANLINES, INC., | ) |
| HANDLE WITH CARE MOVING & | ) |
| TRANSPORTATION, AMERICAN | ) |
| HOME RELOCATION, INC., | ) |
| RIGHT-A-WAY MOVERS, LLC, | ) |
| ONR PROPERTY MANAGEMENT & | ) |
| INVESTMENT, LLC | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

**COMES NOW**, Ms. Michelle Moss, Plaintiff in the above-referenced action, and filed her Complaint for Damages, showing as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Ms. Michelle Moss (hereafter "Plaintiff" or "Ms. Moss") is an individual residing in Clayton County, Georgia.

2. Defendant SPIRIT VANLINES, INC. (hereafter "Sprit Vanlines") is a Georgia domestic limited liability company that can be sued via its registered agent InCorp. Services, Inc., located at 2000 Riveredge Pkwy. NW, Suite 885, Atlanta, GA, 30328.

3. Defendant ONR PROPERTY MANAGEMENT AND INVESTMENT, LLC, (hereafter "ONR"), is a Georgia domestic limited liability company, with a principal address of 1800 Montreal Ct. unit #B, Tucker, GA, 30084, and can be served via its registered agent, David Razon, at 1800 Montreal Ct. unit #B, Tucker, GA, 30084.

4. Defendant DAVID AND GOLIATH MOVING (hereafter "David and Goliath") is located at 1800 Montreal Court, Tucker GA 30084.

5. Defendant HANDLE WITH CARE MOVING & TRANSPORTATION, LLC, (hereafter "Handle with Care"), is a Georgia domestic limited liability company, with a principal office address of 6549 Brown St., Apt. 10G, Douglasville, GA, 30134, and can be served via its registered agent, United States Corporation Agents, Inc., at 1420 Southlake Plaza Dr., Morrow, GA, 30260.

6. Defendant AMERICAN HOME RELOCATION, INC., (hereafter "American Home Relocation"), is an Illinois corporation, and can be served via its registered agent, Jerry Whaley, 449 Randy Road, Carol Stream, IL, 60188.

7. Defendant RIGHT-A-WAY MOVERS, LLC, (hereafter "Right-A-Way Movers") is a Georgia Domestic Limited Liability Company, and can be served via its registered agent, United States Corporation Agents, Inc., located at 14220 Southlake Plaza Drive, Morrow, GA, 30260.

8. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 24 U.S.C. § 2000e (hereafter "Title VII"); therefore, jurisdiction with this Court is proper pursuant to 28 U.S.C. § 1331.

9. A substantial part of the events or omissions giving rise to the claim occurred in DeKalb County, Georgia; therefore, venue with this Court is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 90(a)(1).

## ADMINISTRATIVE EXHAUSTION

10. On November 14, 2019, Ms. Moss timely filed charges of sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") against Defendants.

11. On February 22, 2022, the EEOC issued Ms. Moss a Notice of Right to Sue; therefore, this Complaint was filed within 90 days of Ms. Moss's receipt of this notice.

12. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

## FACTUAL ALLEGATIONS

13. Beginning on or around July 7, 2018, Ms. Moss was employed as an administrative assistant by David and Goliath, ONR, Handle with Care, American Home Relocation, and Right-A-Way Movers (collectively, "Defendants" or "Companies").

14. At the time of Ms. Moss's employment, ONR was referred to as David and Goliath Moving ("David and Goliath").

15. David and Goliath, as a corporate entity, was terminated and replaced with ONR.

16. Ms. Moss was engaged to perform work for Defendants, and her job duties were primarily performed at 1800 Montreal Ct. unit #B, Tucker, GA, 30084.

17. During her employment, Ms. Moss performed her job duties to the satisfaction of the Companies' owners, Elad Moran Hasut and David Razon, and was complimented for her work.

18. Ms. Moss was directly supervised by Joseph Ammons, and Mr. Ammons was the owner of Right-A-Way Movers.

19. Ms. Moss was regularly asked to purchase items for David and Goliath using her own funds and required to wait until her next paycheck to be reimbursed.

20. Near the end of August 2019, Ms. Moss began a romantic relationship with Mr. Ammons' brother, who was not a co-worker or supervisor of Ms. Moss.

21. Around the end of September 2019, on a Saturday, Mr. Ammons asked Ms. Moss to cash a $1,000 money order at Ms. Moss's bank.

22. Mr. Ammons told Ms. Moss that the corporate account's funds were frozen over the weekend, and he needed cash for a driver.

23. As instructed, Ms. Moss took the $1,000 money order, written out to moving services, to her bank to be cashed.

24. Because of the timing of the transaction (i.e., Saturday), Ms. Moss's bank held $800 and cashed $200.

25. Ms. Moss signed the money order to be cashed at her bank.

26. Because Ms. Moss was reimbursed by David and Goliath with the payroll cycle, Ms. Moss understood that she, likewise, would reimburse David and Goliath with the payroll cycle.

27. Ms. Moss was paid every week.

28. By October 7, 2019, Mr. Ammons was aware of Ms. Moss's romantic relationship with his brother.

29. During the week of October 7, 2019, Mr. Ammons began targeting Ms. Moss and pressuring her into a sexual relationship.

30. Mr. Ammons told Ms. Moss that he wanted her to "climb on me."

31. Mr. Ammons grabbed Ms. Moss's leg.

32. Mr. Ammons attempted to grab Ms. Moss's butt, and Ms. Moss slapped his hand away from her.

33. On or around October 10, 2019, Mr. Ammons texted Ms. Moss to get her to come to the back and stay late at the warehouse; however, Ms. Moss had already left for the day.

34. When Ms. Moss texted Mr. Ammons that she left for the day, he texted back an angry emoji.

35. On or around October 11, 2019, Mr. Ammons called Ms. Moss to the back of the warehouse and asked her to bring him his notebook.

36. When Ms. Moss brought Mr. Ammons his notebook, Mr. Ammons pulled Ms. Moss closer to him, sat on the couch, and pulled Ms. Moss's romper down.

37. Ms. Moss pulled her clothes back up and tried to leave the area; however, Mr. Ammons blocked Ms. Moss from leaving.

38. Ms. Moss refused Mr. Ammons' repeated requests to engage in a sexual or romantic relationship.

39. After Ms. Moss pulled her clothes back up and attempted to get away from Mr. Ammons, Mr. Ammons reminded Ms. Moss that she needed to reimburse the money order that Mr. Ammons asked her to cash at the end of September.

40. Immediately after the incident, on October 11, 2019, Derrick Beasley another employee who witnessed the incident, stated to Ms. Moss, "You looked like you were about to get raped."

41. On October 11, 2019, immediately after the incident with her supervisor, Mr. Ammons, Ms. Moss went to one of Defendants' owners, David Razon, to discuss reimbursing the money order.

42. Ms. Moss told Mr. Razon that she wanted to reimburse Defendants with her next two paycheck so that Mr. Ammons would not continue to think that Ms. Moss owed him something.

43. Ms. Moss's next paychecks were deducted, and she fully reimbursed Defendants for the money order Mr. Ammons directed her to cash.

44. On October 15, 2019, Ms. Moss texted Elad Moran Hasut, an owner of Defendants, telling him that she was stressed and would like to change her position with Defendants back to customer service.

45. On October 16, 2019, Ms. Moss reported to Mr. Hasut that Mr. Ammons sexually harassed her.

46. When Ms. Moss made her report to Mr. Hasut, Gina Laster and Jackie Laster were also present.

47. After Ms. Moss informed Mr. Hasut of the sexual harassment, Mr. Hasut asked Ms. Moss, "Did you need to get that off your chest?".

48. Based on Mr. Hasut's reaction, it was clear to Ms. Moss that nothing would be done to stop Mr. Ammons' persistent and aggressive sexual harassment, and Ms. Moss's only recourse for her safety was to resign from employment.

49. Ms. Moss gave Mr. Hasut her two weeks' notice of resignation, effective November 1, 2019.

50. Mr. Hasut did not take any action based on Ms. Moss's report.

51. By October 22, 2019, Ms. Moss reimbursed Defendants for the money order that Mr. Ammons directed her to cash.

52. On October 24, 2019, Mr. Ammons came into the office in the morning and handed a copy of the money order to a police officer.

53. On that same day, Ms. Moss was arrested for an alleged forgery of the money order.

54. Ms. Moss, ultimately, was not charged with forgery.

55. On October 24, 2019, Ms. Moss was terminated from employment.

56. After Ms. Moss reimbursed Defendnats, her paychecks continued to be withheld, and Ms. Moss was not paid for her last two weeks of work after she was arrested.

57. Ms. Moss was humiliated and placed under extreme stress and anxiety because of her supervisor's severe sexual harassment.

58. Ms. Moss was subject to further stress and anxiety after being arrested based on conduct directed by her harasser.

59. Because of her arrest, Ms. Moss was unable to take her real estate license exam until 2021, which was originally scheduled for October 31, 2019.

60. Because of her arrest, Ms. Moss lost job opportunities.

# CAUSES OF ACTION

## COUNT ONE
### Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et al.), *Quid Pro Quo* Harassment

61. Ms. Moss repeats and realleges Paragraphs 1 through 60 hereof, as if fully set forth herein.

62. Mr. Ammons was Ms. Moss's direct supervisor while she was working for the Defendants, and he owned Right-A-Way Movers.

63. After Mr. Ammons found out that Ms. Moss was in a sexual relationship with his brother, Mr. Ammons became sexually aggressive and targeted Ms. Moss repeatedly for unwanted sexual harassment and sexual assault.

64. Mr. Ammons subjected Ms. Moss to unwanted sexual advances in the workplace by his repeatedly pressuring Ms. Moss to engage in a sexual relationship, asking her to "climb on" him, intentionally touching and attempting to touch Ms. Moss in a sexual manner, and removing Ms. Moss's clothing at the workplace.

65. When Mr. Ammons directed Ms. Moss to cash a money order at her bank, Ms. Moss complied with Mr. Ammons' directive, which was consistent with her employer's prior requests to finance company purchases up front and be reimbursed later.

66. Ms. Moss reported Mr. Ammons sexual harassment to an owner of Defendants, Mr. Hasut, who did not take Ms. Moss's report seriously or help Ms. Moss in any way.

67. When Ms. Moss would not submit to Mr. Ammons' sexual advances and reported his sexual harassment to Mr. Hasut, Mr. Ammons intentionally misrepresented the facts concerning Ms. Moss cashing a money order at Mr. Ammons' direction, resulting in Ms. Moss being arrested and terminated from employment.

68. Ms. Moss was subject to *quid pro quo* sexual harassment.

69. Ms. Moss suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future wages and benefits, and the costs of brining this action.

70. Defendants intentionally violated Ms. Moss's rights under Title VII, with malice or reckless indifference, and, as a result, are liability for punitive damages.

## COUNT TWO
### Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42U.S.C. § 2000e et al.), Hostile Work Environment Harassment

71. Ms. Moss repeats and realleges Paragraphs 1 through 70 hereof, as if fully set forth herein.

72. Ms. Moss was subject to severe and pervasive sexual harassment by her supervisor, Mr. Ammons, by his repeatedly pressuring Ms. Moss to engage in a sexual relationship, asking her to "climb on" him, intentionally touching and attempting to touch Ms. Moss in a sexual manner, and removing Ms. Moss's clothing at the workplace.

73. Ms. Moss reported Mr. Ammons' unwanted sexual harassment to Mr. Hasut, an owner of Defendants, who did not take her report seriously or take any action to assist Ms. Moss.

74. Mr. Ammons' harassment of Ms. Moss created an intimidating, hostile, and abusive workplace for Ms. Moss.

75. A reasonable person would consider Mr. Ammons' conduct to be intimidating, hostile, or abusive.

76. Ms. Moss suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future wages and benefits, and the costs of brining this action.

77. Defendants intentionally violated Ms. Moss's rights under Title VII, with malice or reckless indifference, and, as a result, are liability for punitive damages.

## COUNT THREE
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. § 2000e et al.)

78. Ms. Moss repeats and realleges Paragraphs 1 through 77 hereof, as if fully set forth herein.

79. On or around October 16, 2019, Ms. Moss engaged in a protected activity by complaining to Elad Moran Hasut, an owner of Defendants, concerning severe and pervasive sexual harassment and sexual assault by her supervisor, Mr. Ammons.

80. About a week later, on October 24, 2019, Mr. Ammons reported to law enforcement that Ms. Moss committed forgery with respect to the money order that he directed her to cash and was fully reimbursed to Defendants.

81. At the end of September, Ms. Moss, at Mr. Ammons' direction, cashed a money order at her own bank, and Ms. Moss fully reimbursed the money order out of her paychecks.

82. Prior to Ms. Moss reporting Mr. Ammons' sexual harassment and assault to Mr. Hasut, it was a common practice with the Defendants to have Ms. Moss pay for company expenses up front and be reimbursed later.

83. On October 24, 2019, Ms. Moss's employment was terminated without explanation.

84. Mr. Ammons' false report to law enforcement set up a pretext for Ms. Moss to be terminated for refusing his sexual advances and reporting his sexual harassment and assault.

85. Ms. Moss's employment was terminated because of her complaint to Mr. Hasut concerning Mr. Ammons' sexual harassment.

86. Ms. Moss suffered damages as a result of Defendants' unlawful retaliatory actions, including emotional distress, the loss of past and future wages and benefits, and the costs of brining this action.

87. Defendants intentionally violated Ms. Moss's rights under Title VII with malice or reckless indifference and, as a result, are liable for punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Ms. Moss respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Ms. Moss for her past and future loss of wages and benefits, plus interest;

C. Award to Ms. Moss liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

D. Award to Ms. Moss all costs and reasonable attorneys' fees incurred in connection with this action;

E. Award to Ms. Moss compensatory damages;

F. Award to Ms. Moss punitive damages; and

G. Grant such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Ms. Moss demands a trial by jury on all claims.

Respectfully submitted this 23rd day of May 2022.

*/s/ Keely Jac Collins*
Keely Jac Collins
Georgia Bar No. 252645
Justin B. Connell
Georgia Bar No. 142692

ELARBEE, THOMPSON,
SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (fax)
collins@elarbeethompson.com
connell@elarbeethompson.com